494 P.2d 68

Darrel BAKER, Petitioner,

v.

STATE of Arizona et al., Respondents.

No. 2 CA–CIV 1163.

Court of Appeals of Arizona,
Division 2.

March 2, 1972.

Johnson, Hayes, Morales & Stompoly, by Donald E. Gabriel, Tucson, for petitioner.

Rose Silver, Pima County Atty., by Terry G. Donaldson, Deputy County Atty., Tucson, for respondents.

HOWARD, Judge.

This is a special action wherein the petitioner questions the order of the trial court denying his constitutional challenge of A.R.S. § 13–895, subsec. A, as amended. The respondents have filed a cross-petition contending that the trial court erred in declaring A.R.S. § 13–895, subsec. B unconstitutional.

On December 7, 1971, a sixteen count direct information was filed against the petitioner charging him with violating A.R.S. § 13–895. The material parts of this statute provide:

"A. It shall be unlawful for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, to telephone another and use any obscene, lewd or profane language or suggest any lewd or lascivious act, or threaten to inflict injury or physical harm to the person or property of any person. It shall also be unlawful to attempt to extort money or other thing of value from any person, or to otherwise disturb by repeated anonymous telephone calls the peace, quiet or right of privacy of any person at the

place where the telephone call or calls were received.

B. The use of obscene, lewd or profane language or the making of a threat or statement as set forth in this section shall be prima facie evidence of intent to terrify, intimidate, threaten, harass, annoy or offend."

## VAGUENESS

Petitioner first contends that A.R.S. § 13–895, subsec. A is unconstitutionally void for vagueness stating that it does not give the defendant fair warning of the proscribed conduct. In particular, petitioner points to the words "obscene" and "profane" as being unconstitutionally vague. In State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964) the court held:

"The law must be definite and certain so that the same standard of conduct may be applied by all persons affected. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes, the mandates of which are so uncertain that they will admit to different constructions. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue." [citations omitted.] 97 Ariz. at 150–151, 397 P.2d at 951.

Citing the Locks case petitioner claims that since the statute does not define the word "obscene" the statute is vague. We do not agree.

In State v. Locks, supra, the court was dealing with the construction of A.R.S. § 13–532, which at that time made it a misdemeanor for a person to write, compose, print, publish, sell, distribute, keep for sale, give, loan or exhibit an obscene or inde-

cent writing, paper or book to any person, or design, copy, draw, engrave, paint or otherwise prepare an obscene or indecent picture or print. The statute at that time did not have the definition of "obscene" as now appears in A.R.S. § 13–531.01.[1]

We first distinguish this case from the case of Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). In that case the California Court of Appeals affirmed the conviction of the defendant who had walked through the courthouse corridors wearing a jacket bearing the words "Fuck the Draft" in a place where women and children were present as a breach of the peace under a California statute prohibiting disturbance of the peace by offensive conduct. In reversing, the United States Supreme Court noted, *inter alia*, that the only conduct which the State of California sought to punish was the act of communication. The United States Supreme Court did not declare the California statute unconstitutional, but rather held that a state cannot make the simple public display of the single four-letter expletive a criminal offense. A.R.S. § 13–895 is not directed at the communication of *thoughts or ideas but at conduct*, in other words, the use of the telephone to terrify, intimidate, threaten, harass, annoy or offend people by use of the language proscribed.

The statute with which we are here concerned is not an "obscenity" statute. It is more analogous to that involved in the case of State v. Starsky, 106 Ariz. 329, 475 P. 2d 943 (1970). There the court had under consideration A.R.S. § 13–371, which made it a crime to disturb willfully and maliciously the peace or quiet of a neighborhood, family or person by means of applying any violent, abusive or obscene epithets to another. In that case the term "obscene" as used in the statute was attacked as being

1. Obscene is defined by this statute as meaning "that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewd-

ness going substantially beyond customary limits of candor in description or representation of such matters and is utterly without redeeming social importance."

vague. The court, in upholding the statute, stated:

"But we are not here faced with the complexities of the sexual connotation of 'obscene' as used in obscenity statutes and applied to literature or the theater. Here the term is used to describe a type of 'epithet'; in other words an obscene adjective, a vulgarity, a profanity or, in plain terms—'cuss words'. It would be inane to apply the constitutional standard of Roth, [Roth v. United States, 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)] to determine if it appealed to prurient interests and even more ridiculous to seek in such activity a redeeming social value, much less any intellectual support for a protagonist's argument." 106 Ariz. at 332, 475 P.2d at 946.

It would be equally inane to interpret the word "obscene" in the context of the *Roth* standards when dealing with obscene phone calls.

We believe that we must take the normal everyday meaning of the word "obscene", in other words: Lewd, impure, filthy, offensive to modesty or decency. The state has a legitimate justifiable interest in regulating and prohibiting the intrusion into the home by means of telecommunications of those individuals who intend to terrify, harass, annoy and abuse the listener by means of the language proscribed by the statute.

■ A resort to epithets of personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act raises no constitutional question. Cantwell v. Connecticut, 310 U. S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Nor do we believe that the word "profane" is vague. It has long been used by the federal government in the regulation of radio broadcasts. *See* Karp v. Collins, 310 F.Supp. 627 (D.N.J.1970), vacated on other grounds sub nom. Kugler v. Karp, 401 U.S. 930, 91 S.Ct. 933, 28 L.Ed.2d 210 (1971); Duncan v. United States, 48 F.2d 128 (9th

Cir. 1931). Profane means irreverence towards God or holy things, speaking or spoken, acting or acted, in manifest or implied contempt of sacred things; blasphemous; as, profane language, profane swearing. It means any words importing an imprecation of divine vengeance or implying divine condemnation, so used as to constitute a public nuisance. Duncan v. United States, supra. We believe that, in the context of a statute which requires that the profane language be used with the intent to terrify, intimidate, threaten, harass and annoy or offend, the word "profane" is not vague.

■ Petitioner contends that proscribing "profane language" abridges his freedom of religion as guaranteed by the First Amendment to the United States Constitution. He cites no cases to uphold this contention. It is not the mere use of profanity which is subject to punishment but only profanity uttered over the telephone with the intent to terrify, intimidate, threaten, harass, annoy or offend. We cannot conceive that the State is abridging anyone's religious freedom by prohibiting him from making the type of telephone call prohibited by the statute.

We accordingly hold that the court was correct in denying petitioner's attack on the constitutionality of A.R.S. § 13–895, subsec. A.

■ As to A.R.S. § 13–895, subsec. B, we also agree that the trial court was correct in ruling that paragraph of the statute to be unconstitutional. The effect of paragraph B is to create a presumption that persons who use obscene, lewd or profane language do so with the specific intent to terrify, intimidate, threaten, harass, annoy or offend. Legislative presumptions, to be valid, must be based on some rational connection between the proven fact and the presumed fact. State v. Bundy, 91 Ariz. 325, 372 P.2d 329 (1962); State v. Childress, 78 Ariz. 1, 274 P.2d 333 (1954); Udall, Arizona Law of Evidence § 193 (1960). The test is whether the inference upon which the presumption is based can

be sustained by common experience and the circumstances of life. State v. Childress, supra. It is our observation that nowadays, obscene, lewd or profane language is not uncommonly used between individuals without any intent to terrify, intimidate, threaten, harass, annoy or offend. We accordingly do not believe that it is rational to assume that merely because a person uses obscene, lewd or profane language over the telephone one can conclude the person is doing so with the intent proscribed by the statute.

The petition for special action is denied.

KRUCKER, C. J., and HATHAWAY, J., concur.