# IN THE COURT OF APPEALS OF IOWA

No. 19-0342
Filed April 1, 2020

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**TOMMY DEAN SANDERS, JR.,**
          Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda,

District Associate Judge.

        Tommy Dean Sanders, Jr. appeals his convictions of third-degree burglary

and possession of contraband in a correctional facility.  **AFFIRMED.**

        John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.

        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Tommy Dean Sanders, Jr. guilty of third-degree burglary and possession of contraband on or in the grounds of a correctional facility. Sanders contends (1) the evidence was insufficient to support the findings of guilt and (2) the district court erred in denying his motion to dismiss the possession-of-contraband charge.

## I. Sufficiency of the Evidence

### A. Third-Degree Burglary

The jury was instructed the State would have to prove the following elements of third-degree burglary:

> 1. On or about the 6th day of August, 2018, the defendant entered [a] garage [in] . . . Newton, Iowa . . . .
> 2. The garage was an occupied structure . . . .
> 3. The defendant did not have permission or authority to enter the garage.
> 4. The garage was not open to the public.
> 5. The defendant did so with the specific intent to commit a theft . . . .

Sanders challenges the sufficiency of the evidence to support the fifth element—whether he had the specific intent to commit a theft. "Specific intent" was defined for the jury as "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind." A reasonable juror could have found the following facts.

Randall Allen and his girlfriend lived in one of three apartments in a house in Newton. A garage on the property was part of the apartment complex. The couple stored property inside the garage. A neighbor's car also was inside.

At about 2:00 a.m. one morning, Allen and his girlfriend were smoking cigarettes in a car "[a] few feet" from the garage when they saw a man, later identified as Sanders, come "from around the garage" and enter the open main door of the garage. Allen turned on his headlights and saw Sanders "[b]y some [storage] tubs." Sanders "ducked down" behind the car for "five to twenty seconds," "popped up," walked out of the garage, and "kind of bolted" into the entryway of the house, which was not more than thirty feet away. Allen got out of the car "and followed him."

From the entryway, Sanders "was trying to open the basement door and get in the basement." Allen confronted him and said, "What are you doing?" Sanders said he was "looking for Fred." Allen responded, "Fred don't live here." Sanders "took off out the door," "[w]alking real, real fast, almost running" in the direction from which he came.

Allen's girlfriend called the police, who located Sanders about two blocks away. Sanders ignored an officer's commands to stop; he "immediately turned around and started walking" away. The officer stopped and spoke to him. Sanders initially denied being in the garage but, following an at-the-scene identification by Allen, he acknowledged entering the garage, purportedly to determine if the vehicle inside belonged to "Fred."

A reasonable juror could have found from these facts that Sanders voluntarily entered the garage to steal something. *See State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980) (noting the "defendant's intent to commit theft could reasonably be inferred from the evidence of surreptitious entry and other circumstances"). Substantial evidence supports the jury's finding of guilt on the

charge of third-degree burglary. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (setting forth standard of review).

### B.      Introduction of Contraband

The jury was instructed the State would have to prove the following elements: "1. On or about the 6th day of August, 2018, the defendant knowingly introduced contraband . . . . 2. Into or onto the grounds of the Jasper County Jail." Sanders does not dispute that he had contraband in the form of marijuana. He challenges the sufficiency of the evidence to support a finding that he "knowingly introduced" contraband into or onto the jail grounds.

A reasonable juror could have found the following facts. On his arrest, Sanders was informed that if he took "anything into the jail it is introducing contraband, which is a felony." The officer escorting him to the jail smelled marijuana in the vehicle. Sanders denied having the drug. When the pair arrived at the jail's sally port, the officer parked his car and opened Sanders' door. He noticed "a very strong odor of marijuana" and observed Sanders "moving his mouth funny." The officer "had him open his mouth" and saw "an object inside." He "assist[ed]" Sanders in removing a "clear, plastic baggie that had been chewed up with a green, leafy residue inside of it," which "later tested positive for marijuana."

A reasonable juror could have found that Sanders "knowingly" introduced the drug into the sally port area. *See* Iowa Code § 719.7(3)(a) (2018) (making it a crime to "[k]nowingly introduce[] contraband into, or onto, the grounds of a secure facility for the detention or custody of juveniles, detention facility, jail, community-based correctional facility, correctional institution, or institution under the management of the department of corrections").

The more difficult question is whether the sally port could be considered "the grounds of the Jasper County Jail." The supreme court recently addressed the question in a different context. In *State v. Davis*, 922 N.W.2d 326, 332 (Iowa 2019), the court was asked to decide whether a jail's sally port was a "place of detention" within the meaning of Iowa Code section 804.20, which governs communications by arrested persons "after arrival at the place of detention." The court held, "Sally ports are not a 'place of detention' for persons, but a parking area for vehicles." *Davis*, 922 N.W.2d at 332. The court considered the purpose behind section 804.20 of allowing an arrested person "to make *phone calls*," which in 1959, when the statute was enacted, required landlines inside a building. *Id.* at 333 (emphasis in original).

That purpose is unique to section 804.20. Section 719.7(3)(a) is not concerned with communication by landline or otherwise but with prohibiting the introduction of contraband into correctional facilities. The provision is broadly worded to encompass "the grounds of" the facilities.

There can be no doubt that the sally port fell within the grounds of the Jasper County jail. According to the officer who escorted Sanders, "The jail secures the area where the vehicle was parked." He testified, "[J]ail staff [had] to open [the sally port] and close it for you." The area contained "a locker" in which the officer placed his gun. Although the officer testified he and Sanders "had not made it to" the door of the jail itself, which was affixed with a sign warning suspects that if they were in possession of contraband, they would need to give it up or be charged with a felony, the officer essentially described the door as being within or immediately contiguous to the sally port. *Cf. State v. Mathias*, 936 N.W.2d 222, 237 (Iowa

2019) (Mansfield, J., dissenting) (interpreting "grounds of a school" within the meaning of Iowa Code section 724.4B(1) to mean "a school plus contiguous real property").

A reasonable juror could have found Sanders knowingly introduced contraband into or onto the grounds of the Jasper County Jail. Substantial evidence supports the jury's finding of guilt on that charge.

## II.    Denial of Dismissal of Contraband Charge

Sanders raised several grounds for dismissal of the contraband charge. First, he asserted the contraband was not introduced into the jail facility. The district court denied the motion on this ground, reasoning section 719.7 "talks about into or onto the grounds" and the language was "certainly broader than just within the confines of the jail itself." For the reasons articulated in connection with Sanders' challenge to the sufficiency of the evidence supporting the charge, we discern no error in the court's reasoning.

Sanders also argues his act was not voluntary and, accordingly, was not criminal. He notes that "the marijuana was removed from [his] mouth by the officer prior to booking." The district court denied this ground for the motion on the basis of *State v. Canas*, 597 N.W.2d 488, 496 (Iowa 1999), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601 (Iowa 2001). We agree the opinion is controlling. There, the court concluded a defendant's submission to police authority did not negate a finding "that he voluntarily committed the offense of introducing a controlled substance into a detention facility." *Canas*, 597 N.W.2d at 496. The court reasoned, "[T]he defendant . . . had the option of disclosing the presence of the drugs concealed on his person before he entered the jail and

became guilty of the additional offense of introducing controlled substances into a detention facility." *Id.* The same is true here.

Sanders next contends "the statute is void for vagueness" and "is overbroad." He did not obtain a ruling on either of these grounds. Nonetheless, we bypass any error-preservation concern and proceed to the merits. *See Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("[T]his court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."); *cf. State v. White*, 545 N.W.2d 552, 554 (Iowa 1996) (concluding a guilty plea did not waive a constitutional challenge to an element of a charge in the trial information).

"A statute is void for vagueness under the Due Process Clause of the Fourteenth Amendment if it requires an act 'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" *White*, 545 N.W.2d at 557 (quoting *State v. Lee*, 315 N.W.2d 60, 62 (Iowa 1982)). Suffice it to say Sanders did not meet his "heavy burden" to show the phrase "into, or onto, the grounds of a secure facility" was unconstitutionally vague.

"A statute is overbroad in violation of the Fourteenth Amendment 'if it attempts to achieve a governmental purpose to control or prevent activities constitutionally subject to state regulation by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" *State v. Ryan*, 501 N.W.2d 516, 517 (Iowa 1993) (citation omitted). Sanders has not articulated what constitutional freedoms he believes were invaded. Accordingly, his over-breadth argument fails.

We conclude the district court did not err in denying Sanders' motion to dismiss the contraband count.

We affirm Sanders' judgment and sentence for third-degree burglary and possession of contraband on or in the grounds of a correctional facility.

**AFFIRMED.**